R. G. LEWIS surviving partner of Lewis & Mosher v. W. D. ROUN-
TREE & CO.

*Warranty—Specific Description—Action for Breach.-- Waiver.*

1. Where L purchased of R a certain number of barrels of rosin, under the following contract, viz : "Received of L $700 in part payment of 500 barrels of strained rosin, to be delivered, &c." and thereupon at the place of delivery L examined and selected the number of barrels purchased from a lot o. barrels largely in excess of the amount purchased ; and the barrels so selected afterwards proved in a great measure not to be "strained rosin ;" *It was held,* that the agreement of R to deliver, &c , amounted to a warranty on his part, that the rosin received by L should be *strained rosin.*

2 In such case, the fact that L had an opportunity to inspect the rosin before or when it was delivered and did in fact select the particular barrels purchased, did not amount to a waiver of the warranty that they should be of the specific description.

3. Where go ds are warranted to come within a specific description, the vendee is entitled, although he does not return them to the vendor or give notice of their failure to come within the description warranted, to bring an action for breach of warranty.

(*Cox* v. *Long.* 69 N. C. 7, cited and approved.)

CIVIL ACTION, tried at June Special Term, 1877, of WAKE Superior Court, before *Buxton, J.*

The case states :   This suit, in form an action of trespass on the case in assumpsit, was instituted on the 11th day of September, 1866, and in its present aspect is substantially a controversy in respect to 517 barrels of strained rosin bought by the plaintiffs from the defendants on the 10th of October, 1865, at Wilson, North Carolina, and paid for at the agreed price of $3.50 per barrel.   The plaintiffs complain that only 116 barrels came up to the description of the article bought and paid for, and that the remaining 401 barrels in respect to which damages are claimed, were not strained rosin, but a greatly inferior article known as dross rosin.

The case was referred to Samuel A. Ashe, Esq., to whose report both parties filed exceptions. The facts found by him are, in brief, as follows: In October, 1865, the plaintiffs bought and paid for 517 barrels of strained rosin, under a contract in words and figures following,—" Received of R. G. Lewis seven hundred dollars in currency in part payment of 500 barrels of strained rosin, at $3.50 per barrel, said rosin to be delivered to said Lewis at the railroad depot in Wilson, N. C., within three weeks from date., October 10th, 1865." (Also like receipt for another lot.) Signed by the defendants. The barrels of rosin were selected by the plaintiffs on the 25th of October, 1865, at said depot, out of a large lot—variously estimated at from 2,000 to 4,000 barrels—belonging to the defendants. They selected their lot of 517 barrels in the absence of the defendants, but with their consent, having been accompanied to the depot by one of the defendants who left them at work, with implements to cut in and inspect the barrels; and they did inspect such as they chose, and selecting about twenty samples of a superior grade to strained rosin, marked their barrels with the initials of their firm, " L. & M.," and shipped them to New York, where they represented the whole lot as corresponding with the samples exhibited, and obtained from Dollner, Potter & Co., in December, 1865, an advance of $3,000. Upon inspection in New York, the lot did not correspnd with the samples, and all of it was not even strained rosin. Dollner, Potter & Co., then sued these plaintiffs, and to settle with them, the plaintiffs brought this suit and transferred their interest in it to Dollner, Potter & Co. There was no evidence of fraud on the part of defendants, but there was evidence that in the large number of barrels from which the plaintiffs made their selection, there were a number of barrels of strained rosin greatly in excess of 517.

The Referee held as matter of law, that said contract

contained a warranty that the rosin agreed to be delivered, should be merchantable as strained rosin; that this warranty was broken as to 401 barrels, and the plaintiffs were entitled to recover; that the measure of damages was the difference between the value of strained rosin at Wilson on the day of the delivery, and the value of the rosin actually delivered on that day; and that the damages so assessed amounted to $327, with interest from date of demand, towit, the date of the service of the summons in this action.

His Honor being satisfied that the plaintiffs did not get the number of barrels of strained rosin because of their own mistake, and by reason of the fact that the suit was brought eleven months after the sale without any notice to the defendants of the mistake, or demand on them to supply other rosin in place of the inferior rosin which the plaintiffs, relying on their own judgment, selected and carried off and sold, reversed the decision of the Referee, and gave judgment against the plaintiffs, from which they appealed.

*Messrs. E. G. Haywood* and *D. G. Fowle,* for plaintiffs.
*Mr. Geo. H. Snow,* for defendants.

RODMAN, J. We think the Judge came to a wrong conclusion. The defendants agreed to deliver 517 barrels of strained rosin, which clearly amounts to a waranty that the article which they deliver is of that specific description. It may be called a condition precedent, and so it is, for the purpose that the vendee is not obliged to receive the article unless it comes within the description. But it is more than that, for it is held, as will presently be seen, that after the vendee has received and retained the articles, he may recover damages if they do not come within the specific description; the description must therefore be a warranty, or what practically is equivalent to it. Benjamin on Sale, §§ 600, 647. Of course it is not meant that words of descrip-

tion are always a warranty. But the cases in which that is held, have all something special to take them out of the rule, and to show that in those cases it was not so intended.

That plaintiffs had an opportunity to inspect the rosin before or when it was delivered and did in fact select the particular barrels out of a large number, did not amount to a waiver of the warranty that it should be of the specific description. This is reasonable. It is almost impossible, or at least very difficult, to tell from any inspection of a barrel of rosin short of breaking it up into fragments, whether it contains dross, that is, chips, dirt, &c., or not. And to break it up, makes it unfit for transportation, and unmarketable. All the above propositions are supported by authority.

In *Jones* v. *Just*, L. R. 3, Q. B. 197, MELLOR, J., says: "In general, on the sale of goods by a particular description, whether the vendee is able to inspect them or not, it is an implied term of the contract, that they shall reasonably answer such description, and if they do not, it is unnecessary to put any other question to the jury."

The Judge refers to the case of *Josling* v. *Kings ford*, C. B. N. S. 447, (106 E. C. L. R.) in which it is distinctly held, that even if the vendee has an opportunity to examine the goods before receiving them, yet if the defect be not patent, he may receive them, and maintain an action upon the warranty that they did not come within the specific description. Examination, or what is the equivalent, an opportunity of examination, is a waiver of any implied warranty as to the quality of the goods, but not that they shall be of the specific description.

On the argument, *Lush*, Q. C., for the vendor who was the defendant, in reply to a remark of ERLE, C. J., said: "That raises the broad question which has never yet specifically been decided, viz, whether upon a sale of goods where the buyer has an opportunity of inspecting them, and buys,

relying on his own judgment, any warranty can be implied either as to quality, or as to the thing being that which it is represented to be." The decision was as above stated. This case is on all fours with the one before us, and both as reasoning, and on a question of this sort, as authority, must be deemed conclusive. See also *Allen* v. *Lake*, 18 Q. B. 560; Benjamin on Sales, § 600, note p. § 647.

It is said, however, that as soon as the plaintiff discovered that a part of the rosin did not come within the description of strained rosin, which he did after it arrived in New York, he was bound to notify the defendants of the defect and to offer to return the rosin to them. We think this is answered by the case of *Poulton* v. *Lattimore*, 9 B. & C. 259 (17 E. C. L. R. 373.). In that case LITTLEDALE, J., said: "I am of opinion that where goods are warranted, the vendee is entitled, although he do not return them to the vendor, or give notice of their defective quality, to bring an action for breach of the warranty," &c. It is true in that case the plaintiff declared upon a breach of warranty as to quality; but there can be no difference in principle between such a warranty, and one as to the identity of the article. Benjamin on Sales, §§ 897 & 899, note r. The only result of a failure to offer to return the goods, or to notify the vendor of their defective quality, is to raise a presumption that the complaint of the quality is not well founded. In this case the plaintiff had paid for the goods, and the property in them had passed to him. The defendant was under no obligation to receive them back and return the price. The case of *Cox* v. *Long*, 69 N. C. 7, supports this view. The plaintiff had contracted and paid for shingles of certain dimensions, and had received and used those delivered with knowledge that they did not correspond to the warranty, without having offered to return them; and it was held that he was entitled to recover damages for breach of the warranty.

We think the Judge erred in holding that the plaintiff was not entitled to recover.

Judgment reversed.   Let this opinion be certified to the end that the case may be proceeded in, &c.

Error.

PER CURIAM.                         Judgment reversed.