STATE'S PRISON v. HOFFMAN & BROTHERS.

(Filed 30 October, 1912.)

1. Vendor and Vendee—Contracts—Delivery—Parol Agreement—Accommodation Bailee.

When the vendor of goods has contracted for delivery at one of two designated places at the option of the vendee at a specified time, and at the request of the vendee agrees to keep them beyond that time after payment thereof, stipulating only that the vendee should keep the insurance paid while remaining in his warehouse, the title passes to the vendee at the time of his payment and acceptance, and the vendor becomes an accommodation bailee, required to exercise only slight care, and the goods thus kept are at the risk of the vendee.

2. Same—Waiver.

When a vendor of goods has agreed to deliver them at or before a certain time, and thereafter becomes an accommodation bailee without further agreement as to the time of delivery, he may not be held liable for failure to deliver under the original contract, but is entitled to have reasonable prior notice, depending upon the circumstances then existing, from his vendee, as to

when he desires delivery to be made; and when, under the original contract, the vendee has the option of two places of delivery, one convenient and the other inconvenient to the vendor, and without reasonable notice requires the vendor to deliver at the inconvenient place, the latter will not be held liable for damages to the goods by reason of their delivery to the more convenient place at the request of the vendee, the second order to deliver them being a waiver of the vendee's right of delivery at the place first designated.

3. **Facts Found by Judge — Agreement — Judgment — Mere Statements—Appeal and Error.**

In this case the parties having agreed that the judge should find the facts, it is held that the court, on appeal, is not bound by a statement found in the judgment, that "the defendants agree that under protest they directed the delivery (of the goods sold to them) at the river landing," it appearing that such was not a finding of fact by the court or an admission by the plaintiff, but a mere statement by the defendants at variance with their own evidence.

ALLEN, J., dissenting; HOKE, J., concurring in the dissenting opinion.

APPEAL by defendant from *Bragaw, J.,* at April Term, 1912, of WAKE.

Action upon contract for sale and delivery of goods, wherein the defendants set up a counterclaim for damages for the plaintiff's failure to deliver in accordance with its terms.

The defendants appealed from the following judgment:

This case coming on to be heard, and being heard before his Honor, *Stephen C. Bragaw,* judge presiding, and a jury, at the April Term, 1912, of the Superior Court of Wake County.

After the conclusion of the evidence, the following admissions having been made for the respective parties, the plaintiff and the defendant, through their counsel in open court, to wit:

The plaintiff admits that if it is determined that it has been guilty of breach of contract in refusing to deliver to the railroad station as requested, and that the breach has not been waived, that such breach of contract was the cause of the injury sustained by the defendant.

The defendants agree that under protest they directed the delivery to the river landing after a refusal of Captain Rhem

to deliver to the railroad station, and if they thereby waived breach of contract, that they are liable for the full amount of balance due on the peanuts and insurance for additional time.

It is further stipulated that the above admission should be construed in the light of the evidence.

It was then agreed that the court should answer the issue upon the evidence and admissions herein set out, the said answer to be treated as though found by the jury. The court thereupon finds that the plaintiff was guilty of breach of contract, in that it refused to deliver peanuts at the railroad station as requested. The court further holds as a matter of law that the defendant waived said breach. The court therefore answers the issue as follows: "Is the defendant indebted to the plaintiff, and if so, in what amount?" A. "Yes; $773.16, with interest from 1 June, 1911."

It is therefore ordered and adjudged by the court that the plaintiff recover from the defendant the sum of $773.16, with interest thereon from 1 June, 1911, until paid, together with costs of this action, to be taxed by the clerk.

STEPHEN C. BRAGAW,<br>
<em>Judge Presiding.</em>

The further facts are stated in the opinion of the Court by *Mr. Justice Brown.*

*Attorney-General and Winston & Biggs for plaintiff.*

*E. L. Travis, J. W. Hinsdale, Jr., and A. P. Kitchin for defendants.*

BROWN, J. In this action plaintiff seeks to recover balance due on 10,475 bushels of peanuts, sold to defendants, who pleaded a breach of contract by way of counterclaim.

By consent, the judge below tried the case as judge and jury. He rendered a verdict and judgment for plaintiff.

We concur with his Honor in the judgment rendered, but think that, while reaching a correct conclusion, he gave the wrong reason for it. In no view of the evidence has there been a breach of the contract by plaintiffs. The peanuts were sold in December, 1909, to be delivered and paid for 1 January,

1910, at the railroad station at Tillery's, four miles distant, or at the river landing a few hundred yards from plaintiff's barn, at option of defendants. On 1 January defendants paid for 10,000 bushels and requested that the entire lot remain in plaintiff's barn until called for. This was agreed to upon defendants paying the insurance. On 24 May, 1910, defendants requested Supervisor Rhem, at plaintiff's farm, to deliver at once to Tillery's Station 500 bags of peanuts. Rhem replied that he had no authority to deliver them at Tillery's; that defendant must phone Superintendent Laughinghouse. The latter had made the contract. Defendants did not phone the superintendent, who was at the time on the farm and within reach, and request of him a delivery at Tillery's. The evidence shows the demand on Rhem was a sudden demand without notice and made at a moment when all the teams were engaged in plowing and when it was extremely inconvenient to make the delivery at a place four miles distant.

As the entire contents of the barn had been sold to defendants, and nothing remained but to measure them, and as defendants had paid for the estimated contents, and accepted them, the title passed to defendants, 1 January, and after that the peas were held at their risk. *Waldo v. Belcher,* 33 N. C., 609. Then plaintiff became a mere accommodation bailee without hire, and required to exercise only slight care.

The plaintiff had notified defendants it was prepared to deliver 1 January, according to contract. The time for hauling the peas to the station or the boat was indefinitely postponed at defendant's request without any consideration. Under such circumstances the plaintiff was entitled to reasonable notice; it could not be compelled to stop the plows at a moment's notice to commence hauling peas to a distant station. All the authorities agree that where delivery is at the option of the buyer, the seller is entitled to reasonable time *after notice* within which to make delivery. 35 Cyc., 182, and cases cited. What is a reasonable time is to be determined by the circumstances attending the particular transaction. In this case no prior notice whatever was given, and the seller, it seems, was expected to make immediate delivery without it. The demand was unreasonable.

We are further of opinion that there was a waiver of delivery at Tillery's and that the delivery on 24 May at the steamer landing was made at defendant's *voluntary* request.

It is true that it is stated in the judgment that "the defendants agree that under protest they directed the delivery to the river landing." This is not a finding of fact by the court or an admission by plaintiff. It is a mere statement of defendants, and is at variance with their own evidence. M. Hoffman in his testimony states that immediately after he returned to Tillery from the State Farm he phoned to Rhem to deliver the peanuts at the river landing, and did not attempt to phone or wire Laughinghouse at any time, as it was plainly his duty to do, if he still desired a delivery at Tillery's.

This is not a case of compulsion, or involuntary waiver from necessity, like the cases cited in defendant's brief.

The judgment of the Superior Court is
Affirmed.

ALLEN, J., dissenting: I dissent from the conclusion of the majority of the Court because I think the record has been misunderstood, and the Court has reversed a finding of fact upon the ground that there is no evidence to support it, when there is no exception to the finding, which it has no power to do.

A fair interpretation of the record is that the parties waived a jury trial and agreed for the judge to find the facts; that evidence was introduced and admissions made to be considered together by the judge; that the judge found as a fact that the plaintiff had broken its contract, and held as matter of law that the defendants had waived the breach.

If so, I think no question is before us except to inquire into the correctness of the legal conclusion as to the waiver, as it has heretofore been regarded as settled that the finding of fact by the judge, a jury trial being waived, is conclusive and binding upon this Court, in the absence of any exception that there is no evidence to support it (*Millhiser v. Balsley,* 106 N. C., 433; *Travers v. Deaton,* 107 N. C., 500; *Roberts v. Insurance Co.,* 118 N. C., 435; *Matthews v. Fry,* 143 N. C., 384), and, as was said in *Barker v. R. R.,* 137 N. C., 222: "This Court best

serves its purpose and discharges its legitimate function in our governmental system when it confines itself to its constitutional orbit to review any decisions of the courts below, upon any matter of law or legal inference."

Possibly the strongest argument that can be made in favor of this view of the record is the fact that the learned counsel for the plaintiff do not devote a line in their carefully prepared brief to the discussion of the contention that the judge did not find the fact as to the breach of the contract against them, or that, if he did so, there was no evidence to support the finding. On the contrary, they say: "Upon these admissions and the evidence in the case, we think that the trial judge was correct in holding that there was a waiver by the defendants of the breach of the contract by the plaintiff to deliver the peanuts at the railroad station if the defendants so elected. Both parties requested the trial judge to find the facts just as a jury would have done. The plaintiff, in order to relieve the court of a finding along that line, admitted that 'if it is determined that it has been guilty of a breach of contract in refusing to deliver to the railroad station as requested, and that the breach has not been waived, that such breach of contract was the cause of the injury sustained by the defendants.' In other words, the plaintiff thereby admitted that if the peanuts had been delivered at the railroad siding, they would not have gotten wet, and that they did get wet because they were not delivered at the railroad station. Thereupon the court 'found that the plaintiff was guilty of breach of contract in that it refused to deliver the peanuts at the railroad station, as requested.' The court likewise held, 'as matter of law, the defendants waived said breach,' and the court thereupon answered the issue, 'Is defendant indebted to the plaintiff, and if so, in what amount?' Answer: 'Yes; $773.16, with interest from 1 June, 1911.' Now, if there is any evidence to sustain the court in its finding that there was a waiver of the breach of contract, we submit that the judgment should be affirmed, and we have endeavored to point out above that there was abundant evidence along this line."

It is no answer to this position to say that the plaintiff could not review the finding of the judge, because the judgment was in its favor.

In *Matthews' v. Fry,* 143 N. C., 384, a jury trial was waived, and upon findings made by the judge, judgment was entered in favor of the defendant, which was reversed on appeal.

"When the certificate of opinion was presented in the court below, the plaintiff moved for judgment in accordance therewith. The defendant resisted this judgment and asked for a trial *de novo,* and insisted that some of the findings of fact had been made by the judge without any evidence to support them."

An appeal was then taken by the defendant, and in disposing of the same the Court says: "The judgment was properly entered for plaintiff in accordance with the mandate of this Court to reverse the judgment. *Summerlin v. Cowles,* 107 N. C., 462; *Bernhardt v. Brown,* 118 N. C., 711. The findings of fact by the judge, when authorized by law or consent of parties, are as conclusive as when found by a jury, if there is any evidence. *Branton v. O'Briant,* 93 N. C., 103; *Roberts v. Insurance Co.,* 118 N. C., 435; *Walnut v. Wade,* 103 U. S., 688. If there was any ground to except to such findings because without evidence to support the finding, upon any point, or for any other cause, the defendant should have done so and have brought up his side of the case also when the plaintiff appealed, or at least he should have entered an exception so as to preserve his rights. It is not unusual for both parties to appeal. Having acquiesced in the findings of fact without exception, it is too late to except now."

Again, the Court says in the opinion in the case we are now considering: "The plaintiff had notified defendants it was prepared to deliver 1 January, according to contract. The time for hauling the peas to the station or the boat was indefinitely postponed at defendant's request, without any consideration."

This is alleged in the complaint and denied in the answer, and no evidence was offered to support the allegation of the complaint.

In addition to the admissions recited in the judgment, it was also admitted "that the contract stipulated that the plaintiff should deliver the peanuts either to the railroad station at Tillery, N. C., or to the boat at the river landing, as the defendant might desire at the time of delivery, and that de-

fendant was to pay the insurance which the State had to pay on the said peanuts from 1 January, 1910, to 24 May, 1910, and that the amount of such insurance was to be calculated by Mr. T. W. Fenner."

"It was also admitted by counsel that there was no controversy as to the amount of damage to the peanuts, the same being $926.25."

I think, therefore, upon a just and fair consideration of the record, we must begin our investigation with the facts established that the plaintiff has broken its contract, and that the defendants have been damaged thereby in the sum of $926.25, which they are entitled to recover by way of counterclaim, or to use as a set-off, unless they have waived the breach, and, upon the facts, I do not think there has been a waiver.

The legal position is not denied, that conduct relied on to constitute a waiver must be *voluntary* and *intentional* and *inconsistent* with the right. A. and E. Ency., 29, pp. 1091-5; Cyc., 40, pp. 253, 261; *Robinett v. Hamby,* 132 N. C., 356.

The law will not permit a party to claim as a waiver an act which it has compelled another to do, by its own default and wrong. It would be violative of the fundamental principle of equity that no man shall profit by his own wrong.

"The act relied on to show an intent to waive must have been done voluntarily and in the absence of compulsory or particularly urgent circumstances. If such circumstances exist, the presumption to waive does not arise." A. and E. Ency., 29, 1096.

"Waiver is a voluntary act. What one does in a dilemma forced upon him by the default of another cannot be counted upon as a waiver. Voluntary choice is of the essence of the act." Cyc., 40, 259; *Cox v. Long,* 69 N. C., 7; *Austin v. Miller,* 74 N. C., 274; *Spiers v. Halstead,* 74 N. C., 620.

"The justice of the rule that acceptance after breach, even though waiver of the right to treat such breach as discharge, is not a waiver of a right of action for damages, is apparent when it is considered that the party not in default is often constrained by his necessities to take what he can get under his

contract, when he can get it. Such conduct should not operate as a waiver of the right of action for damages." Page on Contracts, sec. 1510.

"A waiver is the voluntary and intentional relinquishment of a known right. It implies an election to dispense with something of value, or to forego some advantage which he might at his option have demanded or insisted upon. To constitute a waiver, therefore, the acts relied upon must have been intentionally done with a knowledge of the facts, and the party acting must have been in such situation of freedom to choose that his relinquishment can fairly be said to have been voluntary. What one does in a dilemma, forced upon him by the default of the other, cannot be counted upon as a waiver." Mechem on Sales, sec. 1071.

"The difficulty is in determining whether the acceptance is voluntary and unconditional. The party may have been put in such situation that there is nothing left but to accept the performance tendered and thus make the best of a bad matter; and where this is the case, his acceptance is not necessarily deemed a waiver." Mechem on Sales, sec. 1079.

"Where the circumstances are such as to show that acceptance can, in no just sense, be regarded as voluntary, but rather as compulsory, the presumption of an intention to waive does not arise." *Bailey v. Tully,* 12 Ill. App., 463.

"It often so happens that the purchaser is so situated that it is necessary for him to accept the article in its defective condition. It would indeed be singular that one who had placed him in this position should be allowed to escape liability on his contract." *Cordage Co. v. Rice,* 5 N. D., 432.

The facts are that the plaintiff had sold to the defendants 10,000 bushels of peanuts, under a contract to deliver at the railroad or the landing, at the option of the defendants, and that the defendants had paid for them. The defendants demanded delivery at the railroad, which the plaintiff refused, and the judge finds that there is a breach of contract by the plaintiff. The defendants then directed a delivery at the landing, and the court says this is a waiver.

WARSAW v. MALONE.

I think not, because they were under compulsion, and the act was not voluntary. The plaintiff had the peanuts and the money of the defendants in payment for them, and refused to deliver according to its contract.

The defendants could not sue to recover the money or the peanuts, because it is provided in the act incorporating the plaintiff, that "Any suit or action against such corporation shall be construed to be brought against the State, and no person shall have the right to bring or maintain any suit or action against it, nor shall any of the courts of the State have jurisdiction to try, hear, or determine any such suit or action, except as allowed by the Constitution in cases of claims against the State." Revisal, sec. 5383.

They had to accept delivery at the landing or lose everything, and were, in my opinion, as much under compulsion as any one who has ever been made "to stand and deliver."

MR. JUSTICE HOKE concurs in this opinion.